**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| CLIFFORD SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. CIV-10-0999-HE |
| ) | |
| CENTRAL MINE EQUIPMENT ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Plaintiff Clifford Smith asserts claims for negligence and strict manufacturer's product liability against defendant Central Mine Equipment Company ("CME"). Plaintiff claims a truck-mounted CME-55 drill rig manufactured by the defendant was defectively designed, resulting in injury to him. Presently before the court are defendant's motions to exclude the testimony of plaintiff's expert witness, defendant's motion for summary judgment, and plaintiff's motion for partial summary judgment. An evidentiary hearing was held on June 20, 2012 as to defendant's Daubert motion. The court concludes defendant's Daubert motion should be denied and that both motions for summary judgment should be granted in part and denied in part.

**I. Background**

Plaintiff was employed by Burgess Engineering & Testing ("Burgess") as a drill rig operator. On February 10th, 2010, while working in Elgin, Oklahoma, plaintiff became entangled in the rotating auger of the CME-55 drill rig he was operating. It is not known

exactly how plaintiff came into contact with the auger, but it is undisputed that plaintiff became entangled in the auger while it was rotating and was severely injured as a result.

The CME-55 is a geotechnical drill rig designed to drill holes in the earth by operation of a rotating auger and hydraulics. It is used for a variety of applications in several industries. The CME-55 involved in this case was mounted on a commercial truck. The control station is located on the rear of the rig, next to drill stem. The operator stands on a control platform situated off the ground in order to interact with the control panel and operate the rig.

The drill rig involved here was manufactured by defendant in 1981 and initially sold in 1982. CME reacquired the rig in 1989. In 1991, CME installed a safety system on the drill rig referred to by the parties as "wobble switches." Wobble switches stop the auger from rotating when anything comes into contact with sensors surrounding the drill mechanism. In 1992, defendant resold the drill rig with operable wobble switches.[1] Approximately seven years later, Burgess acquired the drill rig from Triple A Drilling Company. At the time Burgess purchased the drill rig in 1999, the wobble switches were inoperable or had been removed. Burgess knew the wobble switches were not working when it purchased the rig and the switches were never repaired or replaced.

Plaintiff claims the CME-55 drill rig was defectively designed because two safety

---

[1]*In light of the court's disposition of the strict-tort claim on other grounds, it is unnecessary to resolve now the issue raised by the court (and addressed by the parties' supplemental briefs) as to the impact of defendant's reacquisition and resale of the rig.*

features could have been feasibly incorporated into the drill's design when it was originally manufactured and sold in 1981 and 1982, or when it was re-sold by CME in 1992, and such safety features would have prevented his injuries. He asserts the drill rig should have come equipped with a "deadman switch" which would not have allowed the auger to rotate unless an operator was maintaining active pressure on the control mechanism. He also argues the rig should have included a guard or physical barrier to protect the operator and others from becoming entangled in the rotating auger.

Defendant seeks to exclude the testimony of plaintiff's expert witness, William Munsell.[2] Additionally, defendant seeks summary judgment on plaintiff's strict tort, negligence, and punitive damages claims. Plaintiff's motion for partial summary judgment seeks a determination that CME cannot prevail on certain of its defenses and summary judgment on his negligence claim.

## II. Testimony of William Munsell

Defendant seeks to exclude the testimony of William Munsell, arguing that he is unqualified to offer the opinions he offers here and that they are unreliable. The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience,

---

[2]*Plaintiff initially indicated he would also offer expert testimony from Dan Carrocci as to the feasibility of a physical barrier guard, but has since indicated Mr. Carrocci will testify only as a fact witness. His testimony is the subject of a separate motion in limine and does not affect the disposition of the motions addressed here.*

training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

"In accord with [Rule 702], the Supreme Court has determined that the [trial judge] 'must ensure that any and all scientific testimony or evidence is not only relevant, but reliable.'" Bitler v. A.O. Smith Corp., 400 F.3d 1227, 1232 (10th Cir. 2004) (quoting Daubert v. Merrill Dow Pharm. Inc., 509 U.S. 579, 589 (1993)). This gatekeeper function applies to all expert testimony, not merely to that deemed to be "scientific" in nature. Kumho Tire Co. Ltd. v. Carmichael, 526 U.S. 137, 147-49 (1999). The burden of demonstrating the admissibility of expert testimony is on the proponent of the testimony. United States v. Nacchio, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc).

In deciding the admissibility of expert testimony, the court first determines whether the proposed expert is qualified "by knowledge, skill, experience, training, or education" to offer his or her proposed opinions. Fed. R. Evid. 702; Nacchio, 555 F.3d at 1241. Next, the court must analyze the expert's reasoning and methodology to ensure that it is reliable. Nacchio, 555 F.3d at 1241. This requires the court to determine if the expert's proffered testimony has "'a reliable basis in the knowledge and experience of his [or her] discipline.'"

4

Bitler, 400 F.3d at 1232–33 (quoting Daubert, 509 U.S. at 592). Additionally, the district court must inquire "into whether proposed testimony is sufficiently 'relevant to the task at hand.'" *Id.* at 1234 (quoting Daubert, 509 U.S. at 597). Is there an appropriate "fit" between the evidence offered and the material issue to which it is directed? An expert's opinion is inadmissible if it would not be helpful to the jury. *See* Fed. R. Evid. 702(a).

Mr. Munsell seeks to offer the following opinions: (1) the CME-55 drill rig was defectively designed because it did not have a positive safeguarding device which would eliminate or reduce the risk of the operator becoming entangled in the auger while operating the drill auger; (2) the wobble switches defendant added to the rig in 1992 were emergency-stop switches, not positive safeguards, and would not have prevented access to the rotating auger even if they had been operable;[3] (3) a deadman switch could have been incorporated into the CME-55 drill rig relatively inexpensively and it would not have affected the utility of the product;[4] and, (4) the effectiveness of the deadman control could be increased by moving the control station further away from the drill stem or by incorporating a break on the auger's drive shaft.[5] The cornerstone of Mr. Munsell's opinions is that the CME-55

---

[3]*Instead, according to Mr. Munsell, emergency stop switches are not ordinarily triggered until after something comes into contact with a hazard. That is, the wobble switches would not have shut the drill off until after plaintiff became entangled in it.*

[4]*At the hearing, Mr. Munsell indicated it would cost approximately $300 in additional materials to incorporate his deadman switch into the CME-55.*

[5]*Mr. Munsell clarified at the Daubert hearing that he will not be offering any opinion concerning a physical barrier guard in his direct examination.*

deviates from the "Safety Hierarchy,"[6] which, according to Mr. Munsell, is the "core tenet of safe design, memorialized in many [engineering] standards and texts . . ."[7] Munsell's Amended Report, Jan. 2, 2012 [Doc. #51-5].

Mr. Munsell is a mechanical engineer licensed in the state of Oklahoma. He has nineteen years of experience in the area of engineering design and failure analysis. Mr. Munsell has made presentations to the American Society of Mechanical Engineers and the Oklahoma Society of Professional engineers on the topics of failure analysis, safe design, and engineering ethics. In addition to his consulting firm,[8] Mr. Munsell has worked as an engineer performing design and failure analysis functions for five private companies. Although he lacks prior experience with the CME-55 or its competitor drill rigs, Mr. Munsell has experience with similar rigs used in the oil and gas industry, as well as experience with other types of heavy equipment. Mr. Munsell states that he bases his opinions here on mechanical engineering principles of general applicability. While the court has some hesitation about expert opinion based solely on such general principles as the "Safety

---

[6]*According to Mr. Munsell, the Safety Hierarchy requires an engineer to first identify the hazards of a particular product. Then, if feasible, the hazard should be designed out of the product. If the hazard cannot be eliminated by design, then it should be guarded against. Only if the hazard cannot be reduced or eliminated by design or positive safeguarding may warnings or instructions serve as the primary safety measure. Mr. Munsell's opinion is that the CME-55 deviated from this hierarchy because it did not have a positive safeguarding device which would have prevented access to the rotating auger, and it could have.*

[7]*Mr. Munsell relied on the National Safety Council's Accident Prevention Manual for Industrial Operations (1955) as well as more recent publications by the American Society of Metals, the American National Standards Institute, and the American Society of Mechanical Engineer.*

[8]*The bulk of Mr. Munsell's recent activity is as a litigation consultant.*

Hierarchy,"[9] that issue is not squarely raised here. Further, there is no requirement that an expert have specific experience with a particular product before his opinions are admissible. The court concludes that whatever limitations may exist as to Mr. Munsell's qualifications to offer the particular opinions at issue here go to weight rather than admissibility and that his qualifications are sufficient as against 702/Daubert standards.

The methodology by which Mr. Munsell developed his opinions included him viewing the subject drill rig several times, one such instance being while it was still at the scene where plaintiff was injured. In the course of examining the subject drill rig, he took measurements, photographs, and video to assist in forming his opinions. He operated the machine, reviewed its owner and maintenance manuals, and interviewed people knowledgeable about the drill rig's operation. Mr. Munsell also indicated he reviewed the designs of the CME-55's competitor drill rigs and researched published engineering standards which he says apply to the subject drill rig. Mr. Munsell designed a deadman switch which he views as establishing the feasibility of a single switch controlling both the rotation of the augur and the vertical position of it.[10]

The defendant argues Mr. Munsell's methodology was not reliable because he never

---

[9]*See Milanowicz v. The Raymond Corp.*, 148 F. Supp. 2d 525, 538 (D.N.J. 2001) *(excluding testimony of an expert relying on "uncontroversial propositions that the elimination of identifiable, foreseeable hazards is a fundamental concern in industrial design"); see also Terry v. JLG Indus., Inc.*, No. CIV-07-1308-HE, Doc. #106 at 9 (W.D. Okla. April 8, 2009).

[10]*The CME-55 rig already incorporated a dead man switch as to the "feed," which involves control of the vertical position of the augur as it drills or is withdrawn from a hole.*

7

actually installed his proposed deadman control onto the drill rig and tested its operation.[11] CME also notes that Mr. Munsell's opinions were developed exclusively for this litigation and do not reflect various of the other indicators of reliability considered in the Daubert context. Although the question is close, the court concludes these concerns do not render Mr. Munsell's testimony inadmissible in the circumstances here. The various reliability indicators referenced by defendant are appropriate for jury argument as to the weight to be given his testimony, but do not warrant its exclusion entirely. As to the deadman switch he designed, the court concludes Mr. Munsell will be allowed to testify that it establishes the technical feasibility of creating a single switch that controls both augur operation and the feed. He will not, however, be allowed to testify beyond that—such as that the switch would work in the field or be otherwise feasible—given the absence of testing of the switch in that context and the absence of pertinent experience on his part as might otherwise justify a broader opinion. Subject to the limitations on scope noted above, defendant's motion to exclude Mr. Munsell's testimony will be denied.

### III.  Summary Judgment

Summary judgment is appropriate only when the moving party demonstrates that no genuine dispute of material fact exists and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A party who bears the burden of proof at trial on a claim or defense must be able to point to sufficient evidence to support each essential element of the claim or

---

[11]*There is no issue as to the relevance of the proffered opinions.*

defense in order to avoid summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Fed. R. Civ. P. 56(c)(1)(B). All inferences from the evidence are to be viewed in the light most favorable to the non-moving party. Mountain Highlands, LLC v. Hendricks, 616 F.3d 1167, 1169-70 (10th Cir. 2010).

**A. Plaintiff's claims**

*1. Strict tort*

In order to prevail on his claim for strict manufacturer's product liability under Oklahoma law, plaintiff must prove: 1) the product was defective such that it was dangerous to an extent not contemplated by an ordinary consumer of the product, 2) the defect existed at the time it left the defendant's possession or control, and 3) the defect was the proximate cause of the plaintiff's injuries. *See* Kirkland v. Gen. Motors Corp., 521 P.2d 1353, 1362-64 (Okla. 1974). An ordinary consumer is "one who would be foreseeably expected to purchase the product involved." Woods v. Fruehauf Trailer Corp., 765 P.2d 770, 774 (Okla. 1988). The burden of proof on the plaintiff is "a large and heavy one . . . for he must prove that his injury has been caused not necessarily by the negligence of the [d]efendant but by reason of a defect 'built in' and existing at the time of injury." Kirkland, 521 P.2d at 1364.

It is undisputed that the CME-55 drill rig was manufactured for geotechnical applications and intended to be used by skilled operators. Plaintiff was among the class of persons "foreseeably expected" to operate the drill rig. Pltf UMF #91 [Doc. #49]. It is also undisputed that such drill rig operators are aware that they could be seriously injured if they became entangled in the drill's auger. Def UMF #60 [Doc. #48]. The plaintiff himself was

9

aware of the danger of becoming entangled in the auger. Def. UMF Nos. 53-58 [Doc. #48]. Plaintiff does not identify any evidence that the CME-55 was more dangerous than contemplated by its intended and foreseeable users. Instead, he argues only that additional safety features could have been implemented. But evidence that a product could have been designed to be safer, without more, does not establish that the product is unreasonably dangerous under Oklahoma's consumer-expectations test. *See* Woods, 765 P.2d at 775; *see also* Alfred v. Caterpillar, Inc., 262 F.3d 1083, 1089 (10th Cir. 2001). Based on the present submissions, the court concludes that no rational juror could find that the CME-55 posed a danger beyond that which an ordinary drill operator would anticipate.[12] As a result, defendant is entitled to summary judgment on plaintiff's strict manufacturer's product liability claim.

*2. Negligence*

Both plaintiff and defendant have moved for summary judgment as to this claim, but material questions of fact preclude granting either motion. In order to prevail on his negligence claim, plaintiff must show that defendant owed him a legal duty, defendant breached that duty, and such breach was the direct and proximate cause of plaintiff's injuries. Lockhart v. Loosen, 943 P.2d 1074, 1079 (Okla. 1997).

The threshold question for a negligence claim is whether the defendant owed a duty

---

[12]*Ordinarily a product is not unreasonably dangerous under Oklahoma's consumer-expectations test if the danger complained of is obvious to the product's foreseeable users. See 8 Oklahoma Practice Series, Vicki Lawrence MacDougall, Oklahoma Product Liability Law § 8:6 (1st ed. 2007) (hereinafter "Okla. Prod. Liab. L.").*

to the plaintiff. Wofford v. E. State Hosp., 795 P.2d 516, 518 (Okla. 1990). Whether a duty is owed is a question of law for the court. *Id.* at 519. It is fundamental that every person or entity must use ordinary care to avoid a foreseeable risk of injury to other persons. *See* Iglehart v. Bd. of County Comm'rs of Rogers County, 60 P.3d 497, 502-03 (Okla. 2002). The contours of this duty, however, depend on the relationship of the parties and the facts and circumstances of a particular case. *See* Wofford, 795 P.2d at 519. The most important consideration in determining whether a defendant owes a duty of care is the the forseeability of harm to the plaintiff. Lowery v. Echostar Satellite Corp., 160 P.3d 959, 964 (Okla. 2007). Thus, a manufacturer must exercise ordinary care in the design and manufacture of a product to protect foreseeable users of its products from foreseeable risks of harm. *See generally* Royse v. Stine, 473 P.2d 923, 925 (Okla. 1970) ("Since the defendants designed and built this machine, it was their duty to make it safe for those who were called upon to use it." (citing Crane Co. v. Sears, 35 P.2d 916 (Okla. 1934)).[13]

As discussed above, it is undisputed that defendant designed and manufactured the CME-55 drill rig and that plaintiff was among the class of its intended and foreseeable users. It is also undisputed that CME was aware of the risk that drill rig operators or other persons could be injured by becoming entangled in the drill's rotating auger. Pltf UMF Nos. 32-33, 57, 68 [Doc. #49]. Given the location of the control station and platform relative to the drill

---

[13]*Plaintiff does not contend defendant failed to warn of the hazard, and it is well established under Oklahoma law that a manufacturer does not have a duty to warn of obvious dangers. E.g.* Grover v. Superior Welding, Inc., *893 P.2d 500, 503-04 (Okla. 1995). But a manufacturer must still exercise ordinary care when designing a product which poses an obvious danger. See Okla. Prod. Liab. L., supra, §§ 3:1, 3:8; see also* Royse, *473 P.2d at 925.*

11

stem, a rational juror could conclude that CME should have anticipated that an operator might fall from the control platform or otherwise become entangled in the rotating auger while operating the drill rig. Plaintiff's submissions support an inference that plaintiff's injuries were reasonably foreseeable by CME. Consequently, defendant owed a duty to exercise reasonable care in designing the drill rig so as to protect against the risk that the rig's operator would become entangled in the rotating auger.

The next question is whether there is evidence from which the jury could conclude that the rig's design was unreasonable in light of the likelihood and magnitude of the foreseeable hazard and in light of the costs required to reduce or eliminate it. In light of Mr. Munsell's testimony, the court concludes a question of fact exists as to whether CME exercised due care in designing the drill rig. Through that testimony, plaintiff has presented evidence that the CME-55 design was inconsistent with general product design principles at the time it left defendant's control, that defendant could have complied with those principles by incorporating a deadman switch into the drill rig, and that, had CME done so, plaintiff's injuries would not have occurred regardless of whether the wobble switches were operable. Mr. Munsell's testimony also indicates that incorporating a deadman switch into the CME-55 would have been relatively inexpensive and was technically feasible.[14] Further, his opinion controverts Mr. Barnett's opinion that the wobble switches would have prevented plaintiff's

---

[14]*As noted above, any broader opinion by Mr. Munsell as to practical feasibility will not be permitted.*

injuries had they been operable.[15] Although defendant and Mr. Barnett take issue with those and other opinions, the resolution of the dispute is for the jury.

CME also argues that the removal of the wobble switches was a superseding cause which precludes plaintiff's recovery. A superseding cause is an unforeseeable event which is independent of the defendant's original negligent act and which is itself the direct and proximate cause of the plaintiff's injury. *See* State ex rel. Okla. Dept. of Pub. Safety v. Gurich, 238 P.3d 1, 4-5 (Okla. 2010). As stated above, there is a dispute as to whether the wobble switches would have prevented plaintiff's injury had they been operable. Therefore, defendant is not entitled to summary judgment as to plaintiff's negligence claim on this basis.

Finally, CME's contention that no other geotechnical drill rig manufacturers utilized a similar deadman switch when the subject drill rig left defendant's control is not dispositive, even if true. Though relevant to the negligence determination, compliance with industry custom and practice or "state of the art" does not relieve a manufacturer from liability if the manufacturer otherwise failed to exercise due care. *See* Smith v. Minster Mach. Co., 669 F.2d 628, 633 (10th Cir. 1982); Gilmore v. St. Anthony Hosp., 598 P.2d 1200, 1205, n.6 (Okla. 1979).

---

[15]*Mr. Munsell's expert report states that wobble switches are emergency stop switches which do not prevent exposure to the rotating auger in the first instance. Mr. Barnett opines that "[p]assive activation of the wobble switch almost always occurs during an excursion . . . a fall from the platform toward the auger will activate the toggle wand with the operator's body." Barnett's Initial Report at 10 [Doc. #52-7]. But it is not certain that plaintiff fell directly from the platform into the auger such that he would have activated the wobble switch. Thus, whether the wobble switches would have prevented plaintiff's injuries had they been operable is a material question of fact for the jury.*

Both summary judgment motions will be denied as to the negligence claim. Although it may be unusual for a negligence claim to survive summary judgment where the manufacturer's product liability claim does not, that result is permitted under Oklahoma law. *See* Kirkland, 521 P.2d at 1365. While the strict-tort claim focuses on the characteristics of the product and its foreseeable users' expectations, negligence inquires into the reasonableness of the manufacturer's actions in light of foreseeable risks of harm. As a result, the two theories of recovery can yield different results.

**B.  CME's defenses**[16]

Plaintiff seeks a summary determination that defendant cannot prevail on the following defenses: 1) state of the art; 2) misuse, abuse, modification, or alteration;[17] and 3) comparative negligence. As discussed above, state of the art is not a stand-alone, affirmative defense under Oklahoma law, although evidence of industry custom and practice is relevant to whether CME breached its duty of care. Accordingly, plaintiff's motion will be granted insofar as defendant suggests "state of the art" is a complete defense. Plaintiff's motion will also be granted as to CME's misuse defense, as discussed below, but denied as to the other grounds plaintiff raises.

***1. Misuse or abnormal use***

---

[16]*Defendant's discussion of its assumption of risk defense was specifically confined to its argument that it is entitled to summary judgment on plaintiff's strict-tort claim. See Def MSJ, Proposition I(D) at 17-24 [Doc. #48]. Defendant has not argued that plaintiff's negligence claim is barred by that doctrine and the court has not considered its potential application here.*

[17]*This description embraces two separate defenses: misuse and material alteration.*

Misuse is an affirmative defense to product liability claims grounded in both strict tort and negligence. *See* Kirkland, 521 P.2d at 1366. Misuse occurs when the product is used for a purpose other than one which its manufacturer intended or could have reasonably foreseen. Fields v. Volkswagen of Am., Inc., 555 P.2d 48 (Okla. 1976). The undisputed facts in this case demonstrate the drill rig was being used for its intended and foreseeable purpose at the time of plaintiff's injury. Therefore, plaintiff is entitled to summary judgment on this defense.

## *2. Material alteration or modification*

Oklahoma law also recognizes that the subsequent material alteration of a product after it leaves the defendant's control precludes liability. *See* Prince v. B.F. Ascher Co., Inc., 90 P.3d 1020, 1026-27 (Okla. Civ. App. 2004). Summary judgment on this defense is unwarranted because there is a legitimate dispute as to whether the wobble switches would have prevented plaintiff's injuries had they been operable. As a result, whether their disrepair or removal constituted a material alteration of the drill rig is in question.

## *3. Comparative negligence*[18]

Finally, plaintiff seeks summary judgment on CME's comparative negligence defense. He argues there is no evidence that either he or his employer were negligent. However, defendant has presented evidence that both plaintiff and Burgess knew the wobble switches were not functional but that they did not repair them, and that the wobble switches would

---

[18]*Comparative negligence is only a defense to plaintiff's negligence claim.* Kirkland, *521 P.2d at 1367.*

have prevented plaintiff's injuries had they been operable. Barnett's Initial Report at 10 [Doc. #52-7]. Additionally, there is evidence that the drill rig was in a state of disrepair which may have contributed to plaintiff's injuries. *See id.* at 12 (stating the downward slope of the control platform may have contributed to the accident). Further, given that there is no evidence as to exactly how plaintiff came into contact with the auger, the conclusion that plaintiff was careless when operating the drill rig at the time of his injury is among the permissible inferences from the evidence before the court. Accordingly, plaintiff's motion will be denied as to CME's comparative negligence defense.

**C. Punitive Damages**

Defendant seeks a summary determination that plaintiff cannot prevail on his claim for punitive damages. Under Oklahoma law, punitive damages are not recoverable unless a jury finds by *clear and convincing evidence* that the defendant acted with "reckless disregard of the rights of others" or "intentionally and with malice towards others." 23 Okla. Stat. § 9.1(B)(1), (C)(1), (D)(1). A person acts with reckless disregard of the rights of others if he is aware of a "substantial and unnecessary risk that his conduct would cause serious harm to others." Therrien v. Target Corp., 617 F.3d 1242, 1259 (10th Cir. 2010) (quotation omitted). This requires a plaintiff to establish that the defendant's conduct "created a high probability of serious harm to another person." *Id.*

The court has considerable doubt whether the issue of punitive damages will ultimately remain for the jury, given the higher burden of proof and the circumstances suggested by the current submissions. However, as the issue goes only to available relief

16

rather than impacting the validity of an entire claim or defense, and plaintiff's evidence suggests at least an arguable basis for such a recovery, the court concludes it is premature to decide the availability of punitive damages at this time. Defendant's motion will be denied as to the punitive damages issue.

## IV. Conclusion

Defendant's motion to exclude the opinion testimony of Mr. Munsell [Doc. #46] is **DENIED**, subject to the limitation noted. Defendant's motion for summary judgment [Doc. #48] and plaintiff's motion for partial summary judgment [Doc. #49] are **GRANTED** in part and **DENIED** in part as set forth above.

**IT IS SO ORDERED**.

Dated this 27th day of June, 2012.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE